UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHAEL ANTHONY JOHNSON,      )
         )
      Plaintiff,      )
         )
      v.      )      No. 1:16-cv-02738-RLY-DML
         )
COMMUNITY CORRECTIONS OF MARION      )
COUNTY,      )
         )
      Defendant.      )

**ORDER GRANTING MARION COUNTY COMMUNITY CORRECTIONS' MOTION
FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

This civil rights action is before the court for resolution of Defendant Marion County

Community Corrections' (MCCC) motion for summary judgment, dkt. 109.

### I. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "Material facts are those that might affect the outcome of the suit under applicable

substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted).

"A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th

Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court views

the facts in the light most favorable to the non-moving party and draws all reasonable inferences

in the non-movant's favor. *See Barbera v. Pearson Education, Inc.*, 906 F.3d 621, 628 (7th Cir.

2018).

When a party moving for summary judgment asserts facts and supports them with admissible evidence, the court treats those facts as admitted without controversy unless the non-movant specifically controverts them with admissible evidence, shows the movant's assertions are not supported by admissible evidence, or demonstrates that the factual record leaves a material factual dispute. S.D. Ind. L.R. 56-1(f)(1). Conversely, when the non-movant asserts facts and supports them with admissible evidence, the court treats those facts as admitted without controversy. S.D. Ind. L.R. 56-1(f)(2).

## II. Facts

Plaintiff Michael Johnson was charged with multiple crimes in July 2015 in Marion County Superior Court. Dkt. 108-1 at 9. At an initial hearing on July 23, he was granted pretrial release subject to certain conditions, including drug and alcohol monitoring and electronic GPS monitoring. *Id.* at 12. Those conditions remained in place following a bail review hearing on July 29. *Id.* at 12, 27–28.

The court assigned Mr. Johnson to MCCC for monitoring. *Id.* MCCC is a municipal agency whose functions include monitoring criminal defendants granted bail subject to monitoring conditions.

### A. Monitoring Equipment and Maintenance Requirements

The court's order called for MCCC to monitor Mr. Johnson's location using an electronic GPS monitor and to monitor his alcohol consumption using a MEMS blood-alcohol monitor. *Id.* at 27–28. At that time, MCCC used only one model of GPS monitor and one model of MEMS monitor. *See id.* at ¶¶ 22–27. Accordingly, Mr. Johnson was assigned the same models of GPS and MEMS monitors as all other people assigned to MCCC for GPS and MEMS monitoring at that time. *Id.*

On August 14, 2015, Mr. Johnson received information from MCCC about his monitoring conditions and his responsibilities regarding maintenance of his monitoring equipment. *See* dkt. 108-1 at 67–70. He executed a contract acknowledging and accepting these responsibilities. *Id.* The terms of the contract included:

- "If you believe the electronic monitoring equipment is malfunctioning and you have not been contacted by MCCC staff, it is your responsibility to contact your CSM about your concern." *Id.* at 68.

- "You must charge the GPS unit for a minimum of two (2) hours per day to ensure the battery remains charged at all times." *Id.* at 69.

- "I must make contact with my CSM if I have any lost or damaged electronic monitoring equipment. I will be held liable for the cost of the lost or damaged electronic monitoring equipment." *Id.*

- "I understand that all electronic monitoring equipment provided must remain plugged-in and/or charged." *Id.*

MCCC records show that Mr. Johnson met with his CSM[1] six times between August 25, 2015, and March 8, 2016. *See id.* at 43, 46, 50, 56, 60, 62. The records show that Mr. Johnson was provided an opportunity to report any malfunctions or difficulties with his monitoring equipment at each of these meetings but never did so. *Id.* However, the records also show that Mr. Johnson encountered other difficulties—like missing scheduled blood-alcohol tests because he was at work, or losing power to his monitoring devices—and discussed them with his CSM.[2] These records indicate that Mr. Johnson never reported that he had difficulty meeting the conditions of his release due to problems with his equipment.

---

[1] MCCC has not explained this abbreviation in any of its submissions. The court infers that a CSM is an employee of MCCC who meets with individuals regularly over the course of their monitoring programs.

[2] *See, e.g.*, dkt. 108-1 at 43 (device lost power), 44 (device lost power), 46 (device lost power), 47 (missed blood-alcohol tests),  49 (device lost power), 50 (device lost power), 58 (device lost power), 60 (missed tests due to work schedule), 62 (missed tests due to work schedule).

**B.      Reported Violations, Hearings, and Modifications of Conditions**

On October 24, 2015, one of Mr. Johnson's monitoring devices lost power. Dkt. 108-1 at

73. MCCC attempted to contact Mr. Johnson by phone. *Id.* After no one reached Mr. Johnson,

MCCC notified the Marion County Superior Court that Mr. Johnson had violated the conditions

of his release, and the Court issued a warrant for his arrest. *Id.*

Mr. Johnson was arrested on November 6, 2015. *Id.* at 14. Mr. Johnson remained in the

custody of the Marion County Sheriff until November 13, when he appeared for a hearing on his

violation. *Id.* At the conclusion of the hearing, Judge Nelson ordered that Mr. Johnson be released

subject to the same electronic monitoring requirements that were previously in place. *See id.* at 14,

53–54.

MCCC's records reflect that Mr. Johnson missed multiple scheduled blood-alcohol tests in

the months following his hearing. On March 23, 2016, Mr. Johnson's CSM warned him that more

missed tests would "result in a violation." *Id.* at 40. Despite that warning, Mr. Johnson missed

multiple tests between March 31 and April 2. *Id.* at 37. He missed another on April 13. *Id.* at 35.

On that date, Mr. Johnson reported to his CSM that he had started a new job with different hours,

and the CSM adjusted the scheduled times of his daily tests to better align with his work schedule.

*Id.* After Mr. Johnson missed another test on the morning of April 14, his CSM left a voicemail

warning that MCCC would report a violation of his monitoring conditions the next time he missed

a test. *Id.* at 34–35.

Despite receiving that warning on the morning of April 14, Mr. Johnson missed another

test that very evening. *Id.* at 34. He then missed scheduled tests on April 17 and 18. *Id.* at 32–34.

On April 18, MCCC notified Judge Nelson of these violations. *Id.* at 74. The court issued a warrant

on April 21. *Id.* Mr. Johnson was arrested on April 25 and appeared for a hearing the following day. *Id.* at 16.

At the April 26 hearing, Judge Nelson ordered that Mr. Johnson be released subject to stricter monitoring conditions. *Id.* at 78–79. These conditions required a more demanding blood-alcohol monitoring device known as RADAR. *See id.*

MCCC did not monitor defendants required to use the RADAR device. *Id.* at 6, ¶ 71. Rather, it contracted Track Group, a private entity, to provide RADAR devices and monitor defendants' use of them. *Id.* MCCC assigned Mr. Johnson to Track Group for both GPS and blood-alcohol monitoring on April 29, 2016. *Id.* at ¶ 72. From this point forward, MCCC did not provide Mr. Johnson with monitoring equipment or monitor his compliance with his terms of release. *Id.*

### III. Procedural History

Mr. Johnson filed this civil rights suit on October 11, 2016. He asserted that MCCC and Track Group discriminated against him as an African American and denied him equal protection of the laws in violation of the Fourteenth Amendment.

The court allowed the case to proceed with claims that Mr. Johnson has been injured by MCCC and Track Group policies or practices of notifying the courts that African American defendants have violated their monitoring conditions (thereby subjecting them to arrest and jail time) more often than they notify the courts of violations by white defendants. The court has also considered whether MCCC and Track Group have violated Mr. Johnson's equal protection rights by maintaining a policy or practice of providing African American defendants with faulty or inferior equipment more likely to produce violations than the equipment they provide white defendants.

On August 31, 2019, the court granted summary judgment in Track Group's favor. *See* dkt. 99. The court found no evidence of discrimination by Track Group and dismissed Mr. Johnson's claims against Track Group. Now MCCC seeks summary judgment on the same grounds.

### IV. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). "The Equal Protection Clause generally protects people who are treated differently because of membership in a suspect class or who have been denied a fundamental right." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016).

MCCC does not dispute that Mr. Johnson is a member of a suspect class. As a result, any discriminatory action by MCCC would be subject to strict scrutiny. *See Sweeney v. Pence*, 767 F.3d 654, 668 (7th Cir. 2014) ("If either a suspect class or fundamental right is implicated, the government's justification for the regulation must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause.") (internal quotation omitted).

First, though, the court must address the question of whether MCCC took any discriminatory action against Mr. Johnson. To establish a violation of the Equal Protection Clause, the plaintiff must prove that the defendants' actions "'had a discriminatory effect' and that the defendants 'were motivated by a discriminatory purpose.'" *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001)). Because the undisputed facts show no discriminatory effect or purpose, the inquiry need not progress any farther.

## V. Analysis

As with Track Group, the record contains no evidence that MCCC treated Mr. Johnson differently than any other individual with respect to monitoring equipment or reporting violations.

MCCC has presented evidence in the form of sworn testimony that it has never had a policy or practice that permitted its personnel to treat defendants differently based on race or socioeconomic status. Dkt. 108-1 at 7, ¶¶ 76–77. In fact, at the time Mr. Johnson was under MCCC's supervision, it only used one model of GPS monitor and one model of blood-alcohol monitor. *Id.* at ¶¶ 74–75.

MCCC has presented admissible evidence to support its positions that it did not have a policy or practice of providing African American defendants with faulty or inferior equipment or of reporting their violations more frequently than it reported violations by white defendants. The same evidence supports the conclusion that MCCC did not treat Mr. Johnson differently than any other individual with respect to monitoring equipment or reporting violations. Because MCCC has supported these assertions with admissible evidence, the court must treat them as admitted without controversy unless Mr. Johnson specifically controverts them with his own admissible evidence or demonstrates that the factual record leaves a material factual dispute. S.D. Ind. L.R. 56-1(f)(1).

Mr. Johnson has not presented any evidence to support his allegations or rebut MCCC's evidence. His response primarily takes issue with MCCC's responses to his discovery requests. But the court has already ruled on all discovery motions, and the time to take up these issues is long past. Aside from relitigating discovery disputes, Mr. Johnson notes that MCCC has the option of responding to defendants' violations with "administration hearings" but chose to report his violations to the court, subjecting him to arrest and jail time. Dkt. 118 at 9; dkt. 118-10 at ¶ 9. But this fact, standing alone, is irrelevant to his equal protection claim.

An equal protection claim is premised on one person being treated differently than others. Mr. Johnson has presented evidence about his own treatment by MCCC and about how MCCC might have treated him differently. He has presented no evidence about how MCCC treated anyone else. And without doing so, he cannot establish that MCCC discriminated against him.

### VI. Conclusion

Defendant MCCC's motion for summary judgment, dkt. [109], is **granted**. This action is **dismissed with prejudice**. Final judgment consistent with this Entry shall now issue. The final judgment shall reflect that judgment has also been granted in Track Group's favor as discussed at dkt. 99.

**IT IS SO ORDERED.**

Date:      8/28/2019

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MICHAEL ANTHONY JOHNSON
2302 N. Ritter Ave.
Apt. 1
Indianapolis, IN 46218

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov